# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |
|---|---|
| **WILLIAM M. TURNER, III,** <br> **Individually and on behalf** <br> **of all others similarly situated,** <br><br>      **Plaintiff,** <br><br> **VERSUS** <br><br><br> **NINE ENERGY SERVICE, LLC** <br><br>      **Defendant.** | **CIVIL ACTION NO. 4:15-CV-03670** |

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' OPPOSED MOTION FOR CONDITIONAL CERTIFICATION AND <u>NOTICE TO POTENTIAL CLASS MEMBERS</u>

Jennifer L. Anderson
Attorney-In-Charge
(TX Bar No. 24047796; Federal ID 34754)
Jones Walker LLP
Four United Plaza
8555 United Plaza Boulevard
Baton Rouge, LA 70809
Telephone: (225) 248-2040
Facsimile: (225) 248-3040
E-mail: janderson@joneswalker.com

Christopher S. Mann
(TX Bar No. 24061563; Federal ID 605320)
Jones Walker LLP
201 St. Charles Avenue
New Orleans, LA 70170-5100
Telephone: (504) 582-8332
Facsimile: (504) 589-8332
E-mail: cmann@joneswalker.com

*Attorneys for Nine Energy Service, LLC*

{B1097061.1}

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ...................................................................................................1

II.     FACTS ..................................................................................................................2

III.    ISSUES PRESENTED..........................................................................................3

IV.     PLAINTIFFS' BURDEN, WHILE LENIENT, IS NOT "INVISIBLE" AND
        CONDITIONAL CERTIFICATION IS FAR FROM AUTOMATIC ...............3

V.      ANALYSIS AND ARGUMENT .........................................................................5

        A.      Plaintiffs have failed to allege, substantially or otherwise, a uniform
                policy, plan, or decision warranting conditional certification ..........................5

        B.      Liability issues will be highly individualized based on the exemption
                defenses at issue, such that representative discovery and adjudication
                is improper..................................................................................................7

                1.      Individualized issues raised by the MCA exemption ...............................8

                2.      Individualized issues raised by highly-compensated and other §
                        213(a)(1) exemptions...............................................................11

        C.      The cookie-cutter declarations offered in support of Plaintiffs' Motion
                are not based on personal knowledge and are instead filled with
                conclusory allegations and other inadmissible testimony ...............................13

        D.      Plaintiffs' putative class definition is overly broad and should be
                limited to the position and Nine subsidiary or division for which they
                actually worked ..................................................................................15

VI.     NOTICE ISSUES.................................................................................................17

VII.    CONCLUSION....................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acevedo v. Allsup's Convenience Stores, Inc.*,
  600 F.3d 516 (5th Cir. 2010) .......................................................................4

*Aguirre v. SBC Communications, Inc.*,
  No. H-05-3198, 2006 WL 964554 (S.D. Tex. April 11, 2006) ........................3, 4, 5

*Andel v. Patterson–UTI Drilling Co., LLC*,
  280 F.R.D. 287 (S.D. Tex. 2012).................................................................6

*Barnett v. Countrywide Credit Industries, Inc.*,
  2002 U.S. Dist. LEXIS 9099 (N.D. Tex. May 21, 2002) ...............................18

*Barron v. Henry County Sch. Sys.*,
  No. 1-cv-1182, 242 F. Supp. 2d 1096 (M.D. Ala. 2003)...............................5

*Benavides v. Home Depot USA, Inc.*,
  No. H–06–0029, 2006 WL 1406722 (S.D.Tex. May 19, 2006) ......................15

*Bishop v. Petro-Chemical Transport, LLC*,
  582 F. Supp. 2d 1290 (E.D. Cal. July 17, 2008).........................................10

*Blake v. Hewlett–Packard Co.*,
  No. 4:11-cv-592, 2013 WL 3753965 (S.D. Tex. July 11, 2013) ...................6

*Cadle Co. v. Whataburger of Alice, Inc.*,
  174 F.3d 599 (5th Cir. 1999) .....................................................................15

*Christopher v. SmithKline Beecham Corp.*,
  132 S. Ct. 2156, 183 L. Ed. 2d 153 (2012) ...............................................11

*Cornell v. Nine Energy Service, LLC*,
  4:15-cv-0620 (S.D. Tex. Mar. 9, 2015) ............................................. 15, 16, 17

*Dewan v. M-I, L.L.C.*,
  CIV.A. H-12-3638, 2014 WL 2981362 (S.D. Tex. June 27, 2014)..................15

*England v. New Century Fin. Corp.*,
  370 F. Supp. 2d 504 (M.D. La. 2005)..........................................................4, 5

*Glanville v. Dupar, Inc.*,
  No. H-08-2537, 2009 WL 3255292 (S.D. Tex. 2009).....................................8, 9

*Green v. Harbor Freight Tools USA, Inc.*,
    888 F. Supp. 2d 1088 (D. Kan. 2012) ................................................................13

*Greene v. H & R Block E. Enters., Inc.*,
    727 F. Supp. 2d 1363 (S.D. Fla. 2010) .............................................................16

*H & R Block, Ltd. v. Housden*,
    186 F.R.D. 399 (E.D. Tex. 1999)........................................................................14

*Harris v. Fee Transp. Servs., Inc.*,
    No. 3:05-cv-0077, 2006 WL 1994586 (N.D. Tex. May 15, 2006).........................6

*Hoffman-LaRoche Inc. v. Sperling*,
    493 U.S. 165 (1989).........................................................................................3, 4

*Holt v. Rite Aid Corp.*,
    333 F. Supp. 2d 1265 (M.D. Ala. 2004) ..........................................................8, 13

*Johnson v. Big Lots Stores, Inc.*,
    561 F. Supp. 2d 567 (E.D. La. 2008) ................................................................12

*Jones v. Cretic Energy Servs., LLC*,
    4:15-cv-0051, 2015 WL 8489978 (S.D. Tex. Jan. 9, 2015) .....................1, 4, 7, 11

*King v. West Corporation*,
    No. 8:04-cv-318, 2006 U.S. Dist. LEXIS 3926 (D. Neb. 2006).........................6, 7

*LaFleur v. Dollar Tree Stores, Inc.*,
    No. 2:12–cv–00363, 2012 WL 4739534 (E.D.Va. Oct. 2, 2012) .....................15, 16

*Lentz v. Spanky's Rest. II, Inc.*,
    491 F.Supp.2d 663 (N.D.Tex. 2007) ...........................................................5, 14, 18

*Levinson v. Spector Motor Serv.*,
    330 U.S. 649, 67 S.Ct. 931, 91 L.Ed. 1158 (1947).................................................8

*Lusardi v. Xerox Corp.*,
    122 F.R.D. 463 (D.N.J. 1988)..........................................................................4, 12

*Mooney v. Aramco Services Co.*,
    54 F.3d 1207 (5th Cir. 1995) .........................................................................4, 5, 6

*Morisky v. Public Service Elec. and Gas Co.*,
    111 F. Supp. 2d 493 (D.N.J. 2000) ...................................................................7, 8

*Oetinger v. First Residential Mortgage Network, Inc.*,
    No. 3:06-cv-381, 2009 U.S. Dist. LEXIS 61877 (W.D. Ky. Jul. 15, 2009) ............7

*Pedigo v. 30003 South Lamar, LLP*,
    666 F. Supp. 2d 693 (W.D. Tex. 2009)................................................................4

*Reich v. Homier Distributing Co., Inc.*,
    362 F.Supp.2d 1009 (N.D. Ind. 2005) ...............................................................8

*Salazar v. Bloomin' Brands, Inc.*,
    2:15-cv-105, 2016 WL 1028371 (S.D. Tex. Mar. 15, 2016) ...............................15

*Simmons v. T-Mobile USA, Inc.*,
    No. H-06-1820, 2007 WL 210008 (S.D. Tex. Jan. 24, 2007)............................4, 5

*Smith v. Heartland Automotive Services, Inc.*,
    404 F. Supp. 2d 1144 (D. Minn. 2005) ..............................................................13

*Songer v. Dillon Res., Inc.*,
    569 F. Supp. 2d 703 (N.D. Tex. 2008) ............................................................5, 14

*Stiles v. FFE Transp. Servs.*,
    No. 3:09-cv-1535, 2010 U.S. Dist. LEXIS 24250 (N.D. Tex. Mar. 15, 2010).......14

*Tolentino v. C & J Spec-Rent Services Inc.*,
    716 F. Supp. 2d 642 (S.D. Tex. 2010) ...............................................................19

*Trinh v. JP Morgan Chase & Co.*,
    No. 07-cv-1666, 2008 WL 1860161 (S.D. Cal. Apr. 22, 2008) ...........................12

*Valcho v. Dallas County Hosp. Dist.*,
    574 F.Supp.2d 618 (N.D. Tex. 2008) ................................................................18

*Vallejo v. Garda CL Southwest, Inc.*,
    56 F. Supp. 3d 862, 868 (S.D. Tex. 2014), *appeal dismissed*, 14-20666 (5th
    Cir. May 4, 2015)..............................................................................................8

*Vanzinni v. Action Meat Distributors*,
    995 F. Supp. 2d 703 (S.D. Tex. Jan. 31, 2014)....................................................10

*Villarreal v. St. Luke's Episcopal Hospital*,
    751 F. Supp. 2d 902 (S.D. Tex. 2010) ...............................................................18

*Xavier v. Belfor USA Group, Inc.*,
    585 F.Supp.2d 873 (E.D. La. 2008)...................................................................18

**Statutes**

29 U.S.C. 216(b) .............................................................................1, 4, 7, 14, 15

29 U.S.C. § 213(a)(1)...................................................................................1, 11

29 U.S.C. § 213(b)(1) ....................................................................................1, 8, 9, 10, 11

49 U.S.C. § 31132(1)(A) ...........................................................................................9

49 U.S.C. § 31502 ........................................................................................................8

Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for
   Users, Pub. L. No. 109-59, 119 Stat. 114 ...................................................9

SAFETEA-LU Technical Corrections Act of 2008, Pub. L. No. 110-244, 122 Stat.
   1572.................................................................................................................9, 10

**Other Authorities**

29 C.F.R. § 541.100 ................................................................................................12

29 C.F.R. § 541.200 ................................................................................................12

29 C.F.R. § 541.300 ................................................................................................12

29 C.F.R. § 541.601 ...........................................................................................1, 11

29 C.F.R. § 782.2(a) .............................................................................................8, 9

## I.      INTRODUCTION

Nine Energy Service, LLC ("Nine") opposes Plaintiffs' Motion for Conditional Certification and Notice to Potential Class Members ("Motion").[1] Rec. Doc. 11.

Lead Plaintiff, William M. Turner, III ("Turner"), filed this lawsuit on December 18, 2015, on behalf of himself and others allegedly similarly situated under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) against Nine, the parent company of his former employer – Tripoint, LLC ("Tripoint"). Rec. Doc. 1. Plaintiff claims he and other Field Service Specialists for tubing conveyed perforating ("TCP") and completion services, including the handful who have filed consent forms to join this lawsuit (collectively "Plaintiffs"), were entitled to but did not receive overtime pay while working for Nine.  Nine denies the claims because Plaintiffs and other Field Service Specialists – highly-compensated, highly-skilled, providers of specialty services to the oil and gas industry across multiple states – were at all times exempt from overtime under one or more highly individualized, fact-specific FLSA exemptions, including the Motor Carrier Act ("MCA") exemption, 29 U.S.C. § 213(b)(1), the highly-compensated employee exemption, 29 U.S.C. § 213(a)(1) and 29 C.F.R. § 541.601(a), and, as part of the highly-compensated exemption and/or individually, the executive, administrative, and/or professional exemptions, 29 U.S.C. § 213(a)(1). Rec. Doc. 8. Mindful of this Court's ruling in *Jones v. Cretic Energy Servs., LLC*, 4:15-cv-0051, 2015 WL 8489978 (S.D. Tex. Jan. 9, 2015), this memorandum primarily addresses matters specific to this case or that otherwise do not appear to have been raised or considered in that unrelated matter.

---

[1] In support of this opposition, Nine attaches the following evidence and authorities: Exhibit 1, Declaration of Loren McNeely; and Exhibit 2, all Unreported Legal Authorities pursuant to Rule 6(B) of Judge Sim Lake's Court Procedures.

Plaintiffs' motion should be denied because (1) they have failed to provide substantial allegations, much less evidence, of a uniform policy, plan, or decision infected by discrimination as required to show they and other Field Service Specialists are similarly situated, (2) exemption-based liability issues, as well as damages issues, will require individualized discovery and determinations, and (3) Plaintiffs' putative class definition is overly broad and not limited to the to the Nine subsidiary that employed Plaintiffs – Tripoint.   In this specific case, the record reflects that collective adjudication is not legally proper, and it would be neither efficient nor economical for the Court or the parties to conditionally certify an action for which decertification would be inevitable.

## II.   FACTS

Lead Plaintiff Turner and the four opt-in Plaintiffs – David Bauerle (Rec. Doc. 4.), William B. Bulliard (Rec. Doc. 6.), Richard A. Guidry (Rec. Doc. 4.), and Clifton Patrick McDonald (Rec. Doc. 13.) – were all employed as Field Service Specialists by Tripoint, LLC ("Tripoint"). McNeely Decl., ¶ 8. Tripoint was founded in January 2010 as a specialty service company providing downhole TCP services, among other services, in the oil and gas industry. McNeely Decl., ¶ 2. The company began its operations in Lafayette, Louisiana, and eventually expanded into Oklahoma, West Virginia, Texas, Alaska, and other states. McNeely Decl., ¶ 3.

In early 2013, Tripoint became a subsidiary of Nine Energy Service, Inc. ("Nine"). McNeely Decl., ¶ 4. As a subsidiary of Nine, Tripoint's TCP business expanded across the United States. McNeely Decl., ¶ 6. Field Service Specialists were required, or reasonably expected, to travel across state lines in company-assigned vehicles to provide TCP services to the company's customers. McNeely Decl., ¶ 6. Field Service Specialists typically earned in excess of $100,000 annually through a combination of salary and job bonuses. McNeely Decl., ¶ 7. In October of 2014, however, Nine ceased Tripoint's operations and eventually dissolved the

company. McNeely Decl., ¶ 5. Plaintiffs were never employed by another subsidiary of Nine, and none worked for Nine or Tripoint beyond October of 2014. McNeely Decl., ¶ 9.

### III.    ISSUES PRESENTED

(1)    Whether conditional certification is proper given the fact that Plaintiffs present no evidence of a uniform practice, policy, or decision infected by discrimination?

(2)    Whether conditional certification is proper given the highly individualized and fact intensive nature of the Motor Carrier Act exemption and the highly paid exemptions under the specific circumstances of this case?

(3)    Whether Plaintiffs' proposed class should be limited to Field Service Specialists who performed TCP services for Tripoint, Nine's now-dissolved subsidiary?

(4)    Whether the Plaintiffs' suggested notice, Rec. Doc. 11-5, is proper?

### IV.    PLAINTIFFS' BURDEN, WHILE LENIENT, IS NOT "INVISIBLE" AND CONDITIONAL CERTIFICATION IS FAR FROM AUTOMATIC

While the FLSA permits an individual to assert claims on behalf of himself and any "similarly situated" persons, it does not define "similarly situated" or expressly provide for class certification or judicially approved notice to putative plaintiffs. 29 U.S.C. § 216(b). The Supreme Court has recognized that district courts "have discretion, in *appropriate* cases, to implement" the FLSA's collective action mechanism "by facilitating notice to potential plaintiffs." *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 169 (1989); *Aguirre v. SBC Communications, Inc.*, No. H-05-3198, 2006 WL 964554, *4 (S.D. Tex. April 11, 2006) (this Court noted that district courts "have discretion in deciding whether to order notice to potential plaintiffs"). This mechanism is only proper in cases involving "common issues of law and fact arising from the same alleged . . . activity," such that resolution of common issues in one proceeding would promote efficiency and judicial economy. *Id.* at 170.

The Fifth Circuit has yet to decide "how district courts should determine whether plaintiffs are sufficiently 'similarly situated' to advance their claims together in a single *§ 216(b)* action." *Acevedo v. Allsup's Convenience Stores, Inc.,* 600 F.3d 516, 519 n. 1 (5th Cir. 2010). However, the majority of district courts in this circuit, including this one, have adopted the two-stage process recognized in *Lusardi v. Xerox Corp.*, 122 F.R.D. 463 (D.N.J. 1988); *Aguirre*, 2006 WL 964554 at *4; *Pedigo v. 30003 South Lamar, LLP*, 666 F. Supp. 2d 693, 695 n. 5 (W.D. Tex. 2009); *Jones v. Cretic Energy Servs., LLC*, 4:15-cv-0051, 2015 WL 8489978 at *4. During the initial stage, the plaintiff bears the burden of showing that (1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist, and (2) that those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted. *Jones*, 2015 WL 8489978 at *4 (limiting the plaintiffs showing to two elements and holding that the plaintiff does not need to present evidence as to whether individuals similarly situated to the plaintiff want to opt-in).

Most important, the plaintiff must come forward with "'<u>substantial allegations</u> that the putative class members were together the victims of a <u>single decision, policy, or plan</u> infected by discrimination.'" *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1214 n. 8 (5th Cir. 1995), quoting *Sperling v. Hoffman-La Roche, Inc.,* 118 F.R.D. 392, 407 (D.N.J. 1988), *6. Most courts also require some factual support for allegations of class wide discrimination to authorize notice. *Aguirre*, 2006 WL 964554, *6.

"A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *Id.*, at *5, quoting *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005); *Simmons v. T-Mobile USA, Inc.*, No. H-06-1820, 2007 WL 210008, *4 (S.D.

Tex. Jan. 24, 2007) (Atlas, J.) (denying conditional certification); *Barron v. Henry County Sch. Sys.,* 242 F. Supp. 2d 1096, 1104 (M.D. Ala. 2003) ("[T]he mere fact that violations occurred cannot be enough to establish similarity, as that would not ultimately be sufficient to establish a pattern and practice without a showing that the violations were more than sporadic occurrences."). If conditional certification is granted, then, during the second stage, the court decides based on the evidence developed during discovery whether the conditionally-certified class should be decertified. *Mooney*, 54 F.3d at 1213-14. If the court decertifies the class, the opt-in plaintiffs are dismissed without prejudice and the original plaintiffs proceed on their individual claims. *England,* 370 F. Supp. 2d at 508.

While Plaintiffs' burden at this initial stage is relatively lenient, the burden is not "invisible" nor is conditional certification automatic:

> While the plaintiffs' burden at this stage is not onerous, neither is it invisible. *Parker v. Rowland Express, Inc*., 492 F.Supp.2d 1159, 1164 (D.Minn. 2007). In deciding whether plaintiffs have met their burden, the court 'is mindful that it, like practicing attorneys, has a responsibility to refrain from stirring up unwarranted litigation.' *Lentz v. Spanky's Rest. II, Inc*., 491 F.Supp.2d 663, 669 (N.D.Tex. 2007) (internal citations omitted). 'Further, employers should not be unduly burdened by a frivolous fishing expedition conducted by the plaintiff at the employer's expense[ ].' *Id.* (internal citations and quotations omitted).

*Songer v. Dillon Res., Inc.*, 569 F. Supp. 2d 703, 706-07 (N.D. Tex. 2008). "[N]otice is by no means mandatory" and "the relevant inquiry in each particular case is whether it would be appropriate to exercise such discretion." *Harris v. Fee Transp. Servs., Inc.*, No. 3:05-cv-0077, 2006 WL 1994586, *2 (N.D. Tex. May 15, 2006).

## V.    ANALYSIS AND ARGUMENT

### A.    Plaintiffs have failed to allege, substantially or otherwise, a uniform policy, plan, or decision warranting conditional certification

The Fifth Circuit in *Mooney* made clear that a plaintiff must present substantial allegations of a uniform policy, plan, or decision infected by discrimination to show he and the

putative plaintiffs are "similarly situated," thus warranting conditional certification. *Mooney*, 54 F.3d at 1214 n. 8. The only attempt by Plaintiffs to meet this requirement is to allege that Nine had a "broad, uniform practice of paying the Putative Class Members a salary and a bonus without overtime." Rec. Doc. 11, p. 9. In other words, Plaintiffs simply claim they were misclassified as exempt and hope the Court will find this qualifies as a uniform policy, plan, or decision infected by discrimination. However, this is only an alleged FLSA violation, not the alleged discriminatory policy, plan, or decision that caused or lead to the purported violation, which is required to justify conditional certification, and is insufficient as a matter of law to satisfy this threshold requirement.

If, as Plaintiffs suggest, simply paying a salary and classifying employees as exempt were enough to meet the uniform policy, plan, or decision requirement, then it would be a meaningless requirement and every misclassification case would automatically be proper for conditional certification. This is neither logical nor legally correct, as courts have recognized. *Andel v. Patterson–UTI Drilling Co., LLC*, 280 F.R.D. 287 (S.D. Tex. 2012) (rejecting plaintiffs' argument that an alleged uniform misclassification of independent contractors satisfied its burden for conditional certification and denying certification for lack of evidence of a uniform, widespread policy or practice of discrimination); *Blake v. Hewlett–Packard Co.*, No. 4:11-cv-592, 2013 WL 3753965 (S.D. Tex. July 11, 2013) (denying motion for conditional certification of alleged misclassification of "exempt" employees because evidence of a single human resources decision-maker and an uniform "exempt" classification do not show a uniform policy or practice of discrimination).

Courts have made clear that "[m]erely showing that the employer classified a group of employees as exempt is not sufficient to establish that [those] employees **are** similarly situated

for the purposes of an FLSA collective action." *King v. West Corporation*, No. 8:04-cv-318, 2006 U.S. Dist. LEXIS 3926, *41 (D. Neb. 2006) (citation omitted); *see also Morisky v. Public Service Elec. and Gas Co.*, 111 F. Supp. 2d 493, 498 (D.N.J. 2000) (finding defendants' "common scheme" of classifying employees as exempt did not bind class sufficiently such that plaintiffs were "similarly situated"); *Oetinger v. First Residential Mortgage Network, Inc.*, 2009 No. 3:06-cv-381, U.S. Dist. LEXIS 61877, at **8-9 (W.D. Ky. Jul. 15, 2009) ("Merely being classified as exempt does not give rise to a right of action under 29 U.S.C. 216(b). . . . [C]ompanies may indeed apply company-wide policies to their employees, but these policies must cause the alleged FLSA violation for the policy to be considered as a factor in determining whether employees are 'similarly situated' for purposes of bringing a collective action.").

The required allegations are absent from the Complaint and from the declarations submitted with Plaintiffs' Motion. As there is no specification of the uniform, discriminatory policy, plan, or decision that caused the alleged FLSA violation – only references to the alleged violation itself (alleged misclassification and failure to pay overtime) – this requirement has not been met and conditional certification is improper.

**B.     Liability issues will be highly individualized based on the exemption defenses at issue, such that representative discovery and adjudication is improper**

Based on the exemptions at issue, this case requires a highly individualized analysis for liability purposes. The exemptions at issue are, by nature, individualized and require discovery and consideration of numerous plaintiff-specific, job-specific, vehicle-specific, and workweek-specific elements to determine liability. To be clear, Nine does not assert, as the defendant did in *Jones*, that if different exemptions apply to different members of the putative class then collective adjudication is improper. Nine asserts that certain exemptions should not be adjudicated as a collective action based on their individualized nature. In fact, a number of courts

have refused to certify a class, even conditionally, when determining whether the employer improperly treated the plaintiffs as exempt would require a highly individualized, fact-intensive inquiry, as discussed further below with regard to each exemption at issue. *See Reich v. Homier Distributing Co., Inc.,* 362 F.Supp.2d 1009, 1013-14 (N.D. Ind. 2005); *Holt v. Rite Aid Corp.,* 333 F. Supp. 2d 1265, 1274-75 (M.D. Ala. 2004); *Morisky,* 111 F. Supp. 2d at 498.

### 1.    *Individualized issues raised by the MCA exemption*

The FLSA exempts from its overtime requirements "<u>any employee</u> with respect to whom the Secretary of Transportation ["DOT"] has power to establish qualifications and maximum hours of service" pursuant to 49 U.S.C. § 31502, the Motor Carrier Act. 29 U.S.C. § 213(b)(1) (emphasis added); *Vallejo v. Garda CL Southwest, Inc.,* 56 F. Supp. 3d 862, 868 (S.D. Tex. 2014), *appeal dismissed*, 14-20666 (5th Cir. May 4, 2015); *Glanville v. Dupar, Inc*., No. H-08-2537, 2009 WL 3255292, *3 (S.D. Tex. 2009). The exemption eliminates potential conflicts between the U.S. Department of Labor's ("DOL") jurisdiction over the FLSA and the DOT's jurisdiction over the MCA. *Vallejo*, 56 F. Supp. 3d at 868. "An example of potential conflict is the FLSA's requirement to pay overtime hours at one and one-half times the regular pay rate. Encouraging drivers to work overtime hours could undermine safety regulations limiting the number of continuous hours drivers may be on the road." *Id.,* citing *Walters v. American Coach Lines of Miami, Inc.,* 575 F.3d 1221, 1226 (11th Cir. 2009); *Levinson v. Spector Motor Serv.,* 330 U.S. 649, 67 S.Ct. 931, 91 L.Ed. 1158 (1947).

The MCA exemption depends upon both the class to which the employer belongs and "the class of work involved in <u>the employee's job</u>." 29 C.F.R. § 782.2(a). The DOT's power of regulation extends to employees, including drivers, driver's helpers, loaders, and mechanics, who engage in or are likely to be called upon to engage in activities "of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of

passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." *Id.* According to the DOL regulations, the exemption also is to be evaluated on a <u>workweek-by-workweek basis</u>. *Id*. at § 782.2(b) (the employee comes within the exemption "in all workweeks in which he is employed at such job" and discussing whether the employee's activities are "devoted to such safety-affecting work <u>in the particular workweek</u>" at hand).

A series of amendments affecting the exemption imposed yet another individualized factor in determining whether the exemption applies. In 2005, Congress enacted the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users ("SAFETEA-LU"), Pub. L. No. 109-59, 119 Stat. 114; *Glanville,* 2009 WL 3255292, at *4. This amendment limited the DOT's regulatory power to those carriers using commercial motor vehicles, which were defined to have a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater. 49 U.S.C. § 31132(1)(A); *Glanville,* 2009 WL 3255292, at *4. Additionally, in 2008, Congress enacted the SAFETEA-LU Technical Corrections Act of 2008 ("TCA"), Pub. L. No. 110-244, 122 Stat. 1572, which restored the scope of the DOT's regulatory jurisdiction by eliminating the "commercial" requirement and, thus, the limitation imposed on the DOT's authority based on the weight of the vehicle. *Glanville,* 2009 WL 3255292, at *4. At the same time, however, the TCA narrowed the scope of the MCA exemption, separately providing that the overtime provisions of the FLSA shall apply to "a covered employee notwithstanding" the MCA exemption. TCA § 306; *Glanville,* 2009 WL 3255292, at *4.

The TCA specifically refers to a "covered employee" as an "<u>individual</u>" whose work "in whole or in part" is "that of a driver, driver's helper, loader or mechanic" and affects "the safety of operation of motor vehicles <u>weighing 10,000 pounds or less</u> in transportation on public highways in interstate or foreign commerce," and "who performs duties on motor vehicles

weighing 10,000 pounds or less." TCA § 306(e). The DOL issued Field Assistance Bulletin No. 2010-2 on November 4, 2012, stating that the MCA exemption does not apply "in any workweek" in which the individual's work is as described in the TCA.

Thus, under the DOL's interpretation, this exemption alone will require a plaintiff-by-plaintiff, job-by-job, vehicle-by-vehicle, week-by-week analysis in order to assess liability. Nine has shown that the MCA exemption is at issue.  Tripoint's Field Service Specialists are required or reasonably expected to cross state lines to perform TCP services throughout the United States. McNeely Decl., ¶ 6. There simply is no way to conduct discovery on or adjudicate the issues raised in this case on a collective basis, nor is there any benefit to conditionally certifying a case that inevitably will have to be decertified.

One court presented with the same issue agreed with this position and refused to conditionally certify an FLSA collective action based on the individualized issues raised by the MCA exemption defense. In *Bishop v. Petro-Chemical Transport, LLC*, 582 F. Supp. 2d 1290, 1297 (E.D. Cal. July 17, 2008), the court agreed that an "intensive individualized inquiry" as to whether each potential class member drove across state lines would preclude conditional certification even if the plaintiff in that case had shown that he was similarly situated to other drivers. Other courts have more recently cited the individualized inquiry required in MCA exemption cases in decertifying cases that previously have been conditionally certified. *Vanzinni v. Action Meat Distributors*, 995 F. Supp. 2d 703, 723 (S.D. Tex. Jan. 31, 2014) (noting the "highly factual, individualized inquiry that determining whether the MCA exemption applies" would require precluded plaintiff who survived summary judgment from remaining in the certified group); *Rojas v. Garda CL Se., Inc.*, No. 13-23173, 2015 WL 5084135 (S.D. Fla. 2015), *appeal dismissed*, 15-14379 (11th Cir. Dec. 31, 2015) (decertifying the collective action and

noting that determining coverage "will require an individual inquiry into the amount of time each opt-in plaintiff used a light or personal vehicle as opposed to an armored vehicle").

It does not appear that the above discussion was presented to this Court in *Jones* and, thus, that this case presents further considerations for the purposes of a request for conditional certification and notice. Proceeding with discovery on a representative basis will only delay progress in this matter because inevitably, whether for the purpose of a decertification motion, dispositive motion, trial, or otherwise, individualized evidence will be necessary to adjudicate the claims in this case.

### 2. *Individualized issues raised by highly-compensated and other § 213(a)(1) exemptions*

Tripoint's Field Service Specialists were highly compensated for their services, typically earning in excess of $100,000 annually through a combination of salary and job bonuses. Their substantial compensation is a reflection of the exempt nature of their duties. As the Supreme Court noted in *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 183 L. Ed. 2d 153 (2012), the FLSA was not intended to apply to well-compensated employees, referring to those who earned approximately $70,000 annually. Tripoint's Field Service Specialists are clearly high earners of the type referred to by the Supreme Court, and contemplated by the DOL in delineating the highly-compensated exemption. As the DOL recognizes in its regulations, "a high level of compensation is a strong indicator of an employee's exempt status" such that the performance of any one of the exempt duties of the executive, administrative, or professional exemptions combined with the high level of compensation will make the employee exempt. 29 C.F.R. § 541.601(c).

Because Field Service Specialists at Tripoint were highly compensated, their compensation level plus any one of the following duties will make an employee exempt:

Management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

Customarily and regularly directing the work of two or more other employees;

Authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight;

The performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers;

The exercise of discretion and independent judgment with respect to matters of significance;

The performance of work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction.

29 C.F.R. §§ 541.100, 200, and 300. The terms "primary duty," "management," "department or subdivision," "two or more other employees," "particular weight," "discretion and independent judgment," and other key terms used to describe these exempt duties are further defined in the regulations for the purpose of this analysis. 29 C.F.R. §§ 541.100, *et al*. Whether any Field Service Specialist satisfies the highly-compensated exemption, or any other Section 541 exemption at issue will involve a Plaintiff-by-Plaintiff analysis.

Other courts have recognized the impediment to certification that individualized exemption issues can present, both at the first and second stages of the *Lusardi* process. "As the ultimate issue here is whether plaintiffs are misclassified, a **fact-intensive** inquiry into their respective employment experiences is required." *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 575 (E.D. La. 2008) (emphasis added). Exemption defenses are inherently individualized and inhibit the efficiency of proceeding on a collective basis. *Trinh v. JP Morgan Chase & Co.*, No. 07-cv-1666, 2008 WL 1860161, **1, 5 (S.D. Cal. Apr. 22, 2008) (denying conditional

certification due to individualized nature of exemption defenses, noting that whether "loan officers are 'exempt' necessarily involves a fact-by-fact inquiry into the circumstances of each employee to see if he or she falls within an administrative, outside sales, highly compensated, combination, or any other exemption"); *Holt,* 333 F. Supp. 2d at 1271; *Smith v. Heartland Automotive Services, Inc.,* 404 F. Supp. 2d 1144, 1150 (D. Minn. 2005); *Green v. Harbor Freight Tools USA, Inc.,* 888 F. Supp. 2d 1088 (D. Kan. 2012).

As in the cases cited above, the same result should be reached here, where the individualized facts required to assess the exemption defenses must be adjudicated on a case-by-case basis.

### C.    Plaintiffs' declarations in large part are not based on personal knowledge and instead contain conclusory allegations and other inadmissible testimony

Plaintiffs' declarations are virtually identical save for their dates of employment. Rec. Docs. 11-1 – 11-4. They contain many statements not supported by personal knowledge, such as generalized statements of what the Plaintiffs claim to "know" that other unspecified crew members did or how they feel ("I know that all of Nine's field specialists performed the same or similar services . . . ."; "I know that other similarly situated current and former field specialists of Nine would be interested to learn about their rights . . . ."). Rec. Docs. 11-1 – 11-4, ¶¶ 8-9. Plaintiffs do not demonstrate with any competent factual testimony any foundation or basis in personal knowledge for such statements. How could they possibly know what "***all*** of Nine's field specialists" did when they only worked for Tripoint and have no work experience with any other Nine subsidiary? McNeely Decl., ¶ 9. How could they possibly know ***all*** of the "current and former field specialists" or what each such unspecified person would be interested to know when Tripoint is dissolved? McNeely Decl., ¶ 5. Does each Plaintiff actually know what "similarly situated" means? These assertions are conclusory, lack basis in personal knowledge, and cannot

be considered in support of Plaintiffs' Motion. *See H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999). "[U]nsupported assertions of wide-spread FLSA violations, such as the ones made here, [do] not satisfy the movant's 216(b) burden." *Id.*, citing *Haynes v. Singer Co.*, 696 F.2d 884 (11th Cir. 1983).

There is a critical distinction between the type of <u>substantial allegations</u> required by courts in the Fifth Circuit to support a request for conditional certification, and the type of <u>conclusory allegations</u> that the same courts have repeatedly rejected. For example, in *Stiles v. FFE Transp. Servs.*, No. 3:09-cv-1535, 2010 U.S. Dist. LEXIS 24250 (N.D. Tex. Mar. 15, 2010), the court considered the plaintiffs' own declarations, which were "close to identical in substance" and consisted "primarily of conclusory allegations unsupported by any facts based on … personal knowledge." *Id*. at \*3. There, the plaintiffs declared that from their experience and conversations with other employees, each knew his colleagues often worked in excess of 40 hours per week and were subject to the same compensation policies and procedure. *Id*. The court found plaintiffs' attribution of personal knowledge of other employees' work habits and duties to "experience and conversations with other employees" to be vague, conclusory, and insufficient evidence. *Id*. Ultimately, even under the lenient standard, the declarations failed to support conditional certification. *Id*., citing *Songer*, 569 F. Supp. at 707 (conclusory allegations in affidavits submitted by plaintiffs were insufficient to warrant conditional class certification); *see also, Lentz*, 491 F. Supp. 2d at 669 (conditional certification should be denied because plaintiff submitted only conclusory allegations); *H & R Block*, 186 F.R.D. at 400 (conditional certification not warranted because plaintiffs failed to identify potential plaintiffs, submit affidavits of potential plaintiffs, and submit other evidence showing a widespread plan of discrimination).

**D.**     **Plaintiffs' putative class definition is overly broad and should be limited to the position and Nine subsidiary or division for which they actually worked**

If the event the Court disagrees and finds collective adjudication proper, it should qualify the Rule 216(b) class definition by limiting it to Tripoint TCP Field Service Specialists because Plaintiffs were only employed by one Nine subsidiary – Tripoint. To allow otherwise would create overlap with another pending case in which another collective action was conditionally certified against a different subsidiary of Nine for which Plaintiffs and putative class members never worked – CDK Perforating, LLC. *Cornell v. Nine Energy Service, LLC*, 4:15-cv-0620 (S.D. Tex. Mar. 9, 2015). Courts routinely prohibit concurrent or overlapping collective actions. When two collective actions dealing with the same parties and the same issues are pending before two different federal courts or two-different judges within the same court, the court or judge of the second-filed case has the authority to exercise its sound discretion in order to avoid judicial inefficiency and inconsistent rulings. *See Dewan v. M-I, L.L.C.*, CIV.A. H-12-3638, 2014 WL 2981362, at *3 (S.D. Tex. June 27, 2014) (discussing *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999)). Judicial economy and consistency can be achieved through consolidating the two duplicative FLSA collective actions, dismissing the second-filed overlapping collective action in favor of the first, granting a motion to transfer, or granting a motion to intervene. *See, e.g.*, *Dewan*, 2014 WL 2981362 (granting motion to intervene and transfer to promote judicial efficiency); *Salazar v. Bloomin' Brands, Inc.*, 2:15-cv-105, 2016 WL 1028371 (S.D. Tex. Mar. 15, 2016) (transferring second-filed overlapping and simultaneous collective action *sua sponte*); *Benavides v. Home Depot USA, Inc.*, No. H–06–0029, 2006 WL 1406722 (S.D.Tex. May 19, 2006) (transferring plaintiff's collective action claims to court where identical FLSA action was first filed); *LaFleur v. Dollar Tree Stores, Inc.*,

No. 2:12–cv–00363, 2012 WL 4739534, at *8 (E.D.Va. Oct. 2, 2012) (dismissing second-filed collective action and directing plaintiffs to opt-into first action).

In *Greene v. H & R Block E. Enters., Inc.*, 727 F. Supp. 2d 1363 (S.D. Fla. 2010), the court in the Southern District of Florida chose to dismiss with prejudice the duplicative FLSA collective action. The second-filed action was filed in the same court by the same plaintiffs' counsel against the same defendants alleging the same facts and seeking the same damages. *Id*. at 1364-1365. The only differences between the first and second actions were the named plaintiffs and the date of filing – the subsequent action was filed 9 months later just after the opt-in deadline expired. *Id*. at 1365. The Southern District of Florida ruled that it would not allow plaintiff counsel to create a "back-door entry into a conditional class that has been closed after an appropriate notice period." *Id*. at 1368. The court emphasized "that any individual interested in joining [the first-filed action] as a similarly situated conditional plaintiff was required to do so by [the deadline]." *Id*. Finding dismissal appropriate, the court reasoned that those individuals were not without recourse; they just didn't have collective action recourse. *Id*. Those individuals "retain the ability to pursue individual action if they are so inclined, so long as any action complies with procedural safeguards and limitations." *Id*., citing *Bamgbose v. Delta–T Group, Inc.*, 724 F. Supp. 2d 510, 513–16 (E.D.Pa. June 30, 2010).

Here, Plaintiffs' counsel's proposed class creates the potential for a back door for individuals who missed the opt-in period in *Cornell*, a case Plaintiffs' counsel filed against Nine alleging overtime claims on behalf of, among other groups, TCP specialists or technicians employed by another Nine subsidiary, CDK. *Cornell*, 4:15-cv-0620 (S.D. Tex. Mar. 9, 2015) (Collective Action Complaint, Rec. Doc. 1.).   In *Cornell*, Plaintiffs' counsel conditionally

certified the following class against Nine, limiting the class to former employees of CDK Perforating, LLC:

> All current and former employees of CDK Perforating, LLC ("CDK") or Nine Energy Service, LLC ("Nine"), who were employed by CDK or Nine in conjunction with the CDK business during the time period July 20, 2012 to the present in one of more of the following job titles:
>
> • TCP Field Technician or TCP Field Hand

*Id.,* 4:15-cv-0620 (S.D. Tex. July 20, 2015) (Joint Stipulation Regarding Notice, Rec. Doc. 19). *Cornell's* opt-in period closed on October 12, 2015 – two months prior to the filing of this collective action. *Id.*, 4:15-cv-0620 (Joint Certification Discovery Plan, Rec. Doc. 63, Exhibit A, at p. 2, and Order Granting Discovery Plan, Rec. Doc. 65). Now, counsel asks this Court to conditionally certify a broad class that would, without appropriate limitation, include the same class from *Cornell.* Specifically, Plaintiffs seeks to conditionally certify the following "FLSA Class" against all Nine subsidiaries:

> All field specialists/technicians employed by Nine Energy Service, LLC during the past 3 years who were paid a salary and/or a bonus, but no overtime compensation.

Rec. Doc. 11 at 1. The Court should require that any class that might be conditionally certified be limited to individuals who, like Plaintiff Turner and the opt-ins in this matter, worked for Nine's subsidiary, Tripoint. This will avoid potential overlap with another pending conditionally-certified collective action and prevent the improper attempt by Plaintiffs' counsel to back door untimely putative class members in another pending case into this one.

## VI.    NOTICE ISSUES

Nine requests that the Court order the parties to meet and confer about the form and content of Plaintiffs' proposed notice and dissemination plan. There are numerous issues with the proposed notice and plan that should be capable of informal resolution among the parties,

without briefing or Court intervention, based on well-established law. And, any issues that may remain after the parties attempt to reach a resolution can then be presented to the Court for decision, if needed.  Should the Court wish to now consider notice issues, however, there are several issues with Plaintiffs' proposed notice plan:

1.       If the Court were to authorize notice, it should not be in the form or by the methods proposed by Plaintiffs.  The Court, "like practicing attorneys, has a responsibility to refrain from stirring up unwarranted litigation" and solicitation. *Xavier v. Belfor USA Group, Inc.*, 585 F.Supp.2d 873, 878 (E.D. La. 2008), citing *Lentz*, 491 F.Supp.2d at 669; *see also, Valcho v. Dallas County Hosp. Dist.*, 574 F.Supp.2d 618, 622 (N.D. Tex. 2008) ("courts . . . have a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation"). "Further, employers should not be unduly burdened by a frivolous fishing expedition conducted by the plaintiffs at the defendant's expense." *Xavier*, 585 F.Supp.2d at 878 (internal citations omitted).

2.       Defendants should not be required to post the proposed notice and consent forms in all Nine "jobsite trailers." Rec. Doc. 11, p. 3, 12.  All Plaintiffs worked for Nine's now dissolved subsidiary, Tripoint. McNeely Decl., ¶ 8. Thus, there is nowhere to post a notice as the subsidiary for which Plaintiff and opt-ins worked is no longer in operation. Additionally, district courts in the Fifth Circuit have declined to require employers to post notices.  *Villarreal v. St. Luke's Episcopal Hospital*, 751 F. Supp. 2d 902, 920 n. 104 (S.D. Tex. 2010); *Barnett v. Countrywide Credit Industries, Inc.*, No. 1-cv-1182, 2002 U.S. Dist. LEXIS 9099, *6 (N.D. Tex. May 21, 2002) (determining that mailing notice – rather than also posting at defendants' offices – was sufficient to provide potential opt-in plaintiffs with notice of suit). As Nine's subsidiary,

Tripoint, is dissolved and, thus, has no offices or job trailers, posting would be impossible and futile even if it were possible.

3.      Additionally, the proposed notice Plaintiffs submitted does not contain the contact information for defense counsel, and fails to inform potential opt-ins that they "may contact any attorney of their choosing to discuss the case." *Tolentino v. C & J Spec-Rent Services Inc.*, 716 F. Supp. 2d 642, 655 (S.D. Tex. 2010).  This information should be included for fairness.

4.      The language in the section entitled "Are you Eligible to Join This Lawsuit" erroneously qualifies eligibility based on whether an individual was a "wireline field engineer." The correct language should be "Field Service Specialists" as wireline field engineers are not at issue in this suit and were not part of Tripoint's personnel.

5.      The proposed language under the section entitled "Effect of Joining or Not Joining the Lawsuit." is misleading.  First, the language "may lose their rights to recover overtime for work performed in the past by Nine" fails to recognize that recovery is contingent on a judicial finding of entitlement.  Thus, the following language should be added:

> If the Court rules that field specialists are entitled to overtime compensation, eligible workers who do *not* join this litigation may lose their rights to recover overtime for work performed in the past by Nine because the FLSA only allows workers to recover up to the past three years of back wages.

6.       Additionally, there is no language suggesting any risk in participating in the lawsuit, which is inaccurate.  At a minimum, the following language should be added:

> If judgment is rendered in favor of Nine, the Court may tax certain statutory costs against the unsuccessful plaintiffs.[2]

---

[2] Defendants would also agree to include the following language at the end of the sentence: "but the attorneys for the collective action plaintiffs have agreed to pay such costs if they are ever assessed."

## VII.    CONCLUSION

Even at this early stage in the case and in spite of the relatively lenient burden for conditional certification, the case law and record overwhelmingly show that this action is not appropriate for conditional certification. Plaintiffs failed to allege the requisite discriminatory plan, practice, or decision uniformly resulting in the alleged FLSA violation. Additionally, the MCA and other exemption defenses will require plaintiff-specific discovery and preclude representative adjudication. Finally, Plaintiffs' counsel seeks a broad class definition, not properly limited to the subsidiary or jobs at issue, in order to create a back door to concurrent FLSA case. Not every FLSA case is proper for collective action treatment, and this is one of those cases, however few they may be. Conditional certification is not automatic and the standard is not invisible, as Plaintiffs would have the Court believe. The interests of efficiency and judicial economy would not be served by conditional certification as it would only delay inevitable and necessary individual litigation of Plaintiffs' claims.

Respectfully submitted,

  *s/ Jennifer L. Anderson*
Jennifer L. Anderson
Attorney-In-Charge
(TX Bar No. 24047796; Federal ID 34754)
Jones Walker LLP
Four United Plaza
8555 United Plaza Boulevard
Baton Rouge, LA 70809
Telephone: (225) 248-2040
Facsimile: (225) 248-3040
E-mail: janderson@joneswalker.com

and

Christopher S. Mann
(TX Bar No. 24061563; Federal ID 605320)

{B1097061.1}                                  20

Jones Walker LLP
201 St. Charles Avenue
New Orleans, LA 70170-5100
Telephone: (504) 582-8332
Facsimile: (504) 589-8332
E-mail: cmann@joneswalker.com

**Attorneys for Nine Energy Service, LLC**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 19, 2016, a copy of the foregoing was filed electronically using the Court's CM/ECF system and served in accordance with the Federal Rules of Civil Procedure. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.

*s/ Jennifer L. Anderson*
Jennifer L. Anderson